GOODRICK *et al.* ·v. HARRISON *et al., Appellants.*

Division One, November 7, 1895.

| 130 | 263 |
| 77a | 606 |
| 130 | 263 |
| 152 | 656 |
| 130 | 263 |
| 159 | 405 |

1. **Guardian and Ward:** EQUITY: BURDEN OF PROOF. Dealings between guardian and ward are closely scrutinized by courts of equity. The burden of proof is on the guardian to show that any such dealing from which he derived a benefit was fair and just to the ward.

2. ———: PARTITION. In this case a bargain for partition of land between a woman and her father, who was also her guardian, was held valid, as a just division, in view of the interests of both in the land and the value of the part so apportioned to each.

3. **Appellate Practice:** EQUITY: EVIDENCE. In equity causes the supreme court reviews the facts, and may admit or exclude evidence offered or rejected on the circuit, without necessarily granting a new trial where the purport of the evidence is clear.

4. ———: ———: ———. Where rulings on evidence in the trial court become immaterial to the decision of an appeal, they may be ignored as harmless under section 2303 (R. S. 1889).

*Appeal from Bates Circuit Court.*—HON. JAMES H. LAY, Judge.

AFFIRMED.

*Graves & Clark* and *John D. Parkinson* for appellants.

(1) The evidence shows the existence of the relation of guardian and ward, parent and child, a double fiduciary relation. This relation did not cease with the mere fact that the defendant was one day over the age of eighteen, but the undue influence, which the law presumes to exist when such fiduciary relation is shown is still presumed to exist under the evidence in this case. *Garvin's Administrator v. Williams,* 44 Mo. 465; *Harvey v. Sullens,* 46 Mo. 147. (2) After proving the fiduciary relation, and proving it to have existed up to the very day of the so-called trade or exchange, the burden of proof then shifts to the parties claiming under the law from Minnie E. Goodrick to W. W. Goodrick. 2 Pomeroy's Equity Jurisprudence, sec. 951; *Maddox v. Maddox,* 114 Mo. 35; *Street v. Goss,* 62 Mo. 229; *Bridwell v. Swank,* 84 Mo. 467; *Gay v. Gillilan,* 92 Mo. 250. (3) *First.* Under all the circumstances in this case, as shown by the evidence, the deed made by defendant Minnie, to her father and guardian, should have been set aside, at least upon some terms. *Ranken v. Patton,* 65 Mo. 378; *Miller v. Simonds,* 72 Mo. 669; *Cadwallader v. West,* 48 Mo. 483; *Holloway v. Holloway,* 77 Mo. 392; *Ford v. Hennessey,* 70 Mo. 580; *Bradshaw v. Yates,* 67 Mo. 221. *Second.* The plaintiffs should have shown that defendant had independent advice before executing the deed, but the evidence shows instead that the only advice she had was from the father and his attorney. This will

not do. *Miller v. Simonds*, 72 Mo. 687; *Cadwallader v. West*, 48 Mo. 483. (4) The evidence in this case does not show such laches as to debar defendant from equitable relief. No permanent improvements, to speak of, had been made. In fact nothing was done which would make the setting aside of this deed inequitable. The delay was in the interest of the deceased and his legal heirs and they can not complain in a court of equity. *Bradshaw v. Yates*, 67 Mo. 221.

*T. W. Silvers* for respondents.

(1) The supreme court will not set aside the finding of the circuit court on a question of fact, unless entirely satisfied that such finding is against the preponderance of the evidence. *Taylor v. Cayce*, 97 Mo. 243; *Cox v. Esteb*, 68 Mo. 114; *Bank v. Murry*, 88 Mo. 191. (2) Appellants claim that the deed from Minnie Goodrick to her father should have been set aside, at least on "some terms." (3) While we do not contend that there should have been a tender of an unascertained amount, still the maxim "He who seeks equity must do equity" would imply that before appellants could reasonably expect any decree in their favor they should have shown some offer to restore what they had gotten under the deed; and by their pleadings a willingness to do so as a condition for the relief prayed for. They do neither. *Deichmann v. Deichmann*, 49 Mo. 107; *Kline v. Vogel*, 90 Mo. 239; *Morrison v. Hershire*, 32 Iowa, 271; *Foster v. Wightman*, 123 Mass. 100; *Evans v. Folsom*, 5 Minn. 342; *Mumford v. Company*, 4 N. Y. 463; *Campbell v. Campbell*, 21 Mich. 438; *McLaughlin v. McLaughlin*, 20 N. J. Eq. 190; 1 Pomeroy's Eq. Jur., sec. 385. (4) Appellants can not repudiate the deed; and came into court empty handed, saying, "we want to keep all we get out of the transaction and want

all you got, too." 1 Pomeroy's Eq. Jur., sec. 395; *Railroad v. Mayer*, 1 Hilton (N. Y.), 562; *Campbell v. Campbell*, 21 Mich. 438; *McLaughlin v. McLaughlin*, 20 N. J. Eq. 190. (5) Appellants contend that the testimony of Mrs. Harrison as to conversations with third parties should have been admitted. These conversations related to the transaction in issue and were before the death of Goodrick. They were properly excluded under the following authorities. R. S. 1889, sec. 8918; *Chapman v. Dougherty*, 87 Mo. 617; *Meier v. Thieman*, 90 Mo. 433; *Bank v. Hunt*, 25 Mo. App. 170; *Teats v. Flanders*, 118 Mo. 670.

BARCLAY, J.—This action was brought in 1892 by the widow, and some of the children, of W. W. Goodrick against his married daughter, whose husband is joined with her as defendant.

The object of the action is to obtain partition of a tract of four hundred and eighty acres of land in Bates county. The defendant daughter resists partition on the general ground that she is equitably the sole owner of the entire property. That defense is set up by answer, which plaintiffs have put in issue by a reply.

The case was tried by the court, without objection from either party as to that mode of trial.

Many material facts are admitted by the pleadings and by the testimony of both parties. W. W. Goodrick died intestate, July 8, 1891. The land in dispute stood in his name as record owner at that time. He had been twice married. The defendant Mrs. Harrison is his daughter by the first marriage.

The first Mrs. Goodrick died in 1867, while this daughter, her only child, was a very young infant. The latter inherited from her mother a tract of six hundred and forty acres of land, of which the four hundred and eighty acres now in controversy formed part.

After some years Mr. Goodrick married the present Mrs. Goodrick, plaintiff. Thereafter the daughter of the former union lived with her father and step-mother, until her marriage to Mr. Harrison, December 29, 1883, shortly after she attained her majority.

Mr. Goodrick was duly appointed guardian of his daughter, and made final settlement of her estate in December, 1883, a few days before her marriage.

About the same time (and before defendant married) she conveyed the four hundred and eighty acres to her father by deed, duly recorded. A short time after her marriage, her father delivered to her a deed conveying to her the remaining one hundred and sixty acres of the six hundred and forty tract.

These deeds were made in accordance with an agreement between father and daughter to thus divide the land inherited by the latter from her mother, but which her father then held in possession as tenant by the curtesy.

The daughter's claim in the present action is that her deed to her father is void in equity because obtained by undue influence, etc., and as to that claim there is conflicting testimony.

The trial judge found against the claim, and decreed partition of the land between the widow and all the children (including defendant). The widow had elected to take a child's part.

Defendants appealed in the usual way.

No fuller statement of the case is necessary to an understanding of the rulings.

1. The proposition asserted by defendant is sound (as applied to this case) namely, that the burden of proof is on plaintiffs to show that the bargain between defendant and her father, Mr. Goodrick (then her guardian) was fair and just to her.

Dealings between guardian and ward, while that

relation exists, or while the influence arising therefrom is yet operative, are considered by courts of equity proper subjects for investigation. Where the guardian claims a benefit from such dealings, it should be made to appear that they involve no injustice to the weaker party in the transaction, who thus is placed in some measure under the protection of the court of equity, even though, at the time, he may be of age and lawfully competent to contract.

2. The plaintiffs' reply to the claim of unfairness and undue influence (in the apportionment of the six hundred and forty acres between father and daughter) is that the one hundred and sixty acres allotted to the daughter was at that time well worth as much as the four hundred and eighty acres which the father thereby acquired.

He was at that time forty-six years old. He was entitled to the rents and profits of the entire six hundred and forty acres during his life, as tenant by the curtesy. According to recognized standards for estimating his expectancy of life, and in view of the evidence as to the income of this property, his interest in the total estate, in 1883, was somewhat over fifty percent of its then value. His daughter's interest was the remainder of its value, viz., the whole estate, less his life estate.

There is ample evidence in the record, and we consider that the trial court rightly found, that the smaller tract, received by the daughter, whereon she resided for eight years with her husband, and exclusively enjoyed until her father's death, was, at least, of equal, if not of greater, total value than the larger tract which the father received.

3. There is some claim that the daughter was ignorant of her rights as heir at law of her mother, and was kept in ignorance thereof by her father and step-

mother. But her marriage, immediately after this transaction, the retention of the property and enjoyment of it, and the establishment by her at that time of a separate home with her husband, certainly suggest ample opportunities for her independent investigation of the nature of her ownership of the land affected by the dealings with her father.

We are satisfied that she could not have remained in ignorance of her true relations to the property in question for any great length of time after her marriage. Yet she took no steps to undo the bargain made with her father, until after his death and until this suit was brought, some eight years after her marriage.

The issue of laches, however, is not important in view of our holding on the other questions.

4. Some point is made here as to the admissibility of offers of proof by defendant which the court excluded. They were offers of testimony by defendant herself to contradict the account given by some of plaintiffs' witnesses of interviews at which defendant was said to be present. Defendant offered to show that she was not present at such interviews. We do not think it material to discuss the correctness of those rulings.

In equity cases wherein this court passes on the facts, it has authority to admit or exclude evidence offered or rejected at the trial on the circuit, where the purport thereof is clear, without necessarily granting a new trial.

Even accepting in evidence the statements offered by defendant to be shown in contradiction of certain of plaintiffs' witnesses, we would still remain of opinion that the decree of the trial court should not be disturbed. Whether defendant was, or was not, present at the conversations, is unimportant to the result reached, and could not affect it. So the error in ruling on those offers of evidence (if error there was, which we do not

hold) is, in any aspect of the present appeal, harmless, and does not form a basis for a reversal (R. S. 1889, sec. 2303).

The judgment is affirmed. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.