# WILLIAM T. HELM, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, February 16, 1903.

1. **Common Carriers: SHIPPING CONTRACT: JUSTICES' COURTS: EVIDENCE.** In justices' courts there are no pleadings by the defendant and he may show any matter which tends to defeat the plaintiff's action, and if he relies upon the terms of a written contract he should be permitted to introduce it in evidence.

2. ——: ——: **INSTRUCTION.** A shipping contract released the carrier from any and all cause of action for damages that may have accrued to the shipper out of any prior contract. *Held*, such contract became the final and only contract between the parties and the defendant was entitled to an instruction submitting to the jury the questions raised by such contract.

3. ——: ——: ——: **UNREASONABLE DELAY.** A shipping contract provided that the live stock covered by it were not to be transported within any specified time, nor delivered at any destination at any particular hour, nor in season for any particular market. *Held;* the carrier was only liable for unreasonable delay.

4. ——: ——: **INSTRUCTION: SUBMITTING WHOLE CASE: EVIDENCE.** An instruction that if the carrier promised to furnish a car on a day named and failed to keep the promise it was liable, would have been well enough had it gone further and submitted the whole case.

5. ——: ——: **EVIDENCE: AGENT'S ADMISSIONS.** An agent's admissions can only be admitted when the scope of his duty is fixed, and the admission is made when the agent is acting within the scope of his agency, and about his principal's business; and the admissions of a cashier of a freight station relating to the running of trains, are not admissible against a carrier.

6. ——: ——: **EXCESSIVE VERDICT.** The evidence relating to the delay in the shipment of certain live stock is considered and the verdict of $100 held excessive and based upon mere conjectures.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale, Judge.*

REVERSED AND REMANDED.

*Elijah Robinson* and *Harris Robinson* for appellant.

(1) . The cattle in controversy were shipped under a written contract, and of course this contract could not be varied by oral testimony. Hutchinson on Carriers (last Ed.), secs. 126-128; Brown v. Railroad, 18 Mo. App. 568; O'Brien v. Kenney, 74 Mo. 125; Railroad v. Cleary, 77 Mo. 637. (2) The court also committed error in withdrawing the written contract from the consideration of the jury. (3) The court committed error, in permitting plaintiff's witness (Necessary) to testify as to the conversation that took place between him and Mr. Tutt, at the Kansas City stock yards. (4) The court committed error in refusing defendant's instruction No. 3. This instruction told the jury that if defendant entered into the written contract put in evidence, then it was only liable for unreasonable delay in transporting plaintiff's cattle. This instruction undoubtedly contained a correct presentation of the laws applicable to the case.

*Llewellyn Jones* for respondent.

(1) By examining plaintiff's petition and the testimony in this case, the court will discover that this action is for breach of an agreement to furnish cars, and that the bill of lading or contract is not applicable. By the contract defendant agrees to transport "one car, said to contain twenty-three head of cattle," which is meaningless except defendant comply with its prior agreement to furnish a car. (2) Defendant admits that the contract was not complete until the cattle were received, and yet for the purpose of excusing itself from liability, seeks shelter under its terms. A contract must bind both parties. (3) The defendant having filed no · answer in this case, is presumed to have answered by general denial. The contract could not be shown unless·

pleaded. (4) Division 10 of the contract provides: ''That the second party hereby releases and waives any and all cause of action for damages that may have accrued to him by any written or verbal contract prior to the execution hereof.'' This clause is void because plaintiff's cause of action had not accrued at the time the contract was signed, and because there was no consideration to support such a release, either at the time said contract was signed, or after plaintiff's action accrued. (5) Mr. Tutt was the defendant's freight agent at the Kansas City stock yards, the ''agent at destination'' to whom the contract says plaintiff must make complaint. Perhaps Mr. Tutt was not called upon to express himself quite so positively, but the fact remains, that he did, and spoke the truth; and about a matter that was peculiarly under his charge. He said ''go over to the office [meaning his, Tutt's, office] and file complaints.'' We submit the testimony shows that Mr. Tutt was empowered to receive freight for this shipment, and to do generally whatever was necessary and proper to be done on behalf of the defendant, as the agent at destination. A corporation can never speak except through its agents.

SMITH, P. J.—This is an action which was commenced before a justice of the peace. It is alleged in the statement that plaintiff was the owner of twenty-three head of fat cattle which he desired to ship to the Kansas City market from Adams Station, an unimportant station at which defendant kept no agent; and that accordingly, on January 14, 1901, the defendant, through its agent at Independence, promised to furnish at Adams Station a car on that day for the shipment of plaintiff's cattle, for which he (plaintiff) promised to pay the usual freight charges; that relying on said promise plaintiff drove his cattle to Adams Station and there placed them in the defendant's stock pens and had them

ready for shipment, but that defendant failed to furnish the car so promised until the next day (the 15th), by reason of all which plaintiff's cattle were detained at said station and did not reach Kansas City until three o'clock in the afternoon of that day, and seventeen hours later than they would have arrived had defendant kept its promise; and that by reason of defendant's neglect plaintiff was damaged $100.

The plaintiff testified that defendant's agent agreed to furnish him a car at Adams Station in ample time to be loaded and picked up by the freight train going west that would, if on time, pass that point at eight o'clock that evening and reach Kansas City by ten o'clock next morning. He further testified to the other facts alleged in his statement, and that when he engaged the car he also signed a written contract for the shipment.

The defendant introduced the contract referred to by plaintiff in his testimony. It contained, amongst others, this provision:

"First. That the live stock covered by this contract is not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market."

It does not appear from the abstracts that any exceptions were taken or preserved to the action of the court in overruling plaintiff's objections to the introduction of said contract, but the court later on by an instruction given *sua sponte* withdrew the same from the consideration of the jury. The reasons influencing the action of the court in withdrawing the contract are nowhere stated. It is conceded by the plaintiff that he signed and delivered it in duplicate to the defendant, and since it does not appear that any fraud or imposition was practiced, or that any mistake intervened, it must be taken as the sole evidence of the final agreement between the parties. Wyrick v. Railway, 74 Mo. App. 1. c. 416. It was not required of defendant under the statute (section 3852, Revised Statutes) to set it up

by answer or other pleading in order to entitle him to introduce it in evidence. In actions before justices of the peace no formal pleadings are required. There, the general issue is presumed to be pleaded, and under it the defendant may show any matter which tends to defeat the plaintiff's action. On a trial anew in the circuit court the rule is the same. Sherman v. Rockwood, 26 Mo. App. 403; Hornsby v. Stevens, 65 Mo. App. l. c. 189; Reed v. Snodgrass, 55 Mo. 180. If the defendant relied upon the provisions of the contract already quoted as a defense in bar of the plaintiff's action, he had the right to introduce it in evidence without formally pleading its provisions. We can not but think that the action of the court in withdrawing the contract from the consideration of the jury was erroneous.

The defendant, it further seems to us, was entitled to the third instruction requested by him to the effect that if plaintiff entered into a written contract with defendant for the transportation of his cattle, and that by the terms thereof it was agreed that it (defendant) would not transport said cattle within any specified time, or in time for any particular market, that then defendant was only liable for unreasonable delay, etc. Now, if the parties entered into a verbal contract for the furnishing of cars, as alleged in the statement, yet, if after entering into such verbal contract, the parties further entered into the written contract containing the provision previously quoted, then the latter is the sole evidence of the final agreement between them and it can not be varied by prior parol negotiations. Wyrick v. Railway, ante; Railway v. Cleary, 77 Mo. 634; McFadden v. Railway, 92 Mo. 343; O'Bryan v. Kinney, 74 Mo. 125. The written contract was entered into before there had been any breach of the parol contract, and in this respect this case materially differs from that of Harrison v. Railway, 74 Mo. 364; Miller v. Railway, 62 Mo. App. 252; Gann v. Railway, 72 Mo. App. 34. When a written contract is so entered into it will super-

sede and do away with the prior verbal one between the parties. And especially* so when such written contract contains the provision previously quoted, and also a further provision, as here, that the shipper "hereby releases and waives any and all cause of action for damages that may have accrued to him by any written or verbal contract prior to the execution hereof." Miller v. Railway, supra, l. c. 259; Gann v. Railway, supra, l. c. 38; Harrison v. Railway, supra, l. c. 373; Leonard v. Railway, 54 Mo. App. 294. It is clear that when the parties here entered into the written contract that its provisions took the place of and superseded those of the previous verbal contract, and so became the final and only contract between them relating to the furnishing of the car or the shipment of the cattle. The latter contract thereby became merged in the former. Nor will it do to say that there was no sufficient consideration for the substituted or superseding written contract. Leonard v. Railway, supra; O'Bryan v. Kinney, supra. The verbal agreement being out of the way, no good reason can be assigned why the defendant was not entitled to a submission of the case upon the theory of his refused instruction.

The plaintiff's first instruction, telling the jury that if it found that defendant had promised to furnish him a car on the day therein named and failed to keep its promise, then to find for plaintiff, would have been well enough if it had gone further and submitted the points raised by the evidence of the defendant. Clark v. Hammerle, 27 Mo. l. c. 70; Shewalter v. Railway, 84 Mo. App. l. c. 601, and cases there cited.

The plaintiff was permitted, over the objections of the defendant, to prove the admissions of one Tutt, which were in substance that he (Tutt) had told a witness for plaintiff that there was no occasion for the delay in furnishing the car and that the men down there were too neglectful. Plaintiff's said witness further testified that he believed Tutt was agent for defendant

at Kansas City "or something;" that in all the cattle he had ever shipped up he had always paid Tutt the freight there, but that he did not know what he was— that he was agent there, and that he had always made checks payable to him (Tutt) for freight in shipping cattle out to his (witness's) station.

The law is that there must be a prima facie showing of an agent's authority by other evidence before his admissions can be admitted. Mechem on Agency, sec. 716. And in section 714 of the work just referred to, it is stated that it is not every statement or admission which an agent may chance to make that is binding upon the principal. In order to have that effect, they must have been made in respect to a matter within the scope of his authority. If, therefore, the statements or admissions offered in evidence were made by one who either had no authority at all, or had no authority to represent the principal in the matters concerning which they were made, they are not admissible against the principal. So they must have been with reference to the subject-matter of his agency. And the adjudicated cases, with one accord, all declare that the rule which admits the admissions of an agent as against the principal is limited to two cases: first, where the scope of the agency is such that the agent is an agent for the purpose of making the particular admission; and, second, where the admission is in the form of a declaration made by the agent while acting within the scope of his agency and about the business of his principal concerning such business. Lumber Co. v. Kreeger, 52 Mo. App. l. c. 422, and cases there cited. And so it was said in Bergeman v. Railway, 104 Mo. l. c. 86, that the admissions of an agent in reference to the business of the principal, with which he has been entrusted, if made while engaged in its execution, or so soon thereafter as to constitute a part of the transaction, are admissible in evidence.

The evidence nowheré discloses the exact scope of Mr. Tutt's agency. Whether he was one of defendant's stock agents or an agent connected with the defendant's freight office at Kansas City, does not clearly appear. Nor does it appear that he was connected with its train service or engaged in the management or operation of its trains. It would be strange that a freight-collecting station agent could by any admission of his bind the defendant, his principal, by an admission of the kind he appears to have made. As far as appears from the record, his admissions fall far short of meeting the requirement of the rules to which we have adverted. And besides this, they were made a day after the transaction had been completed to which they related. They were, therefore, too remote to be a part of the *res gestae,* if otherwise admissible.

The defendant by its motion for a new trial complained that the verdict was excessive. The plaintiff sued for an even hundred dollars and had judgment for a like amount. The evidence showed that there was a probable shrinkage in the cattle of from twenty-five to forty pounds a head, and that there was a decline of ten cents on the hundred. The jury was told by an instruction for plaintiff that the measure of damages was the difference between the market price when the cattle arrived in Kansas City and that when they should have arrived, and the difference between the shrinkage in weight actually sustained and that which would have taken place had there been no delay. Under this instruction, it is difficult to see how the jury could have reached the conclusion it did. The weight of the cattle was not shown. How, then could the jury tell what the difference in the market price would amount to, unless it had been informed of the weight of the cattle? There was nothing upon which to base the computation. If the cattle declined ten cents per hundred pounds they could not ascertain how much to allow plaintiff on that account until the weight of the shipment was shown. All

the jury had was the amount of the shrinkage, which was 690 pounds. At $4.20 per hundred—the price the cattle brought—the amount of that item of damage was $28.98. The verdict for an amount in excess of that, under the evidence and instructions, was unauthorized. It was based upon conjecture, and for that reason, if for no other, it can not be upheld.

The judgment will be reversed and cause remanded. All concur.