THOMAS BOLAND AND WIFE, Plaintiffs in Error, v. MISSOURI RAILROAD COMPANY, Defendant in Error.

1. *Damages—Action—Negligence.*—The same rigid rule in determining what will be a bar to an action on the ground of contributory negligence will not be applied to an infant, an idiot, or an insane person, as to one who had arrived at an age to possess ordinary judgment and discretion. All that is necessary to give a right of action to the plaintiff for an injury inflicted by the negligence of the defendant, is, that he should have exercised care and prudence equal to his capacity.

2. *Practice—Trial—Instructions.*—Where the plaintiff has closed his evidence, and it has no tendency whatever to prove the issue necessary to a recovery, the court may determine the whole case as a matter of law.

3. *Damages—Action—Negligence.*—Where the defendant has used proper care and caution to prevent an accident, and has been guilty of no negligence, he will not be responsible for an injury caused by such accident.

*Error to St. Louis Circuit Court.*

*Hill,* for plaintiffs in error.

I. The question of negligence should have been left to

the jury in such a case as this.  So it has been held in the case of Hulsenkamp v. Citizen's Railway Co. (34 Mo. 45, and cases there cited; 1 Hill. on Torts, p. 135, § 45, & notes.)  Proof of injury to a passenger on a railroad car, is held *prima facie* evidence of negligence.  (Zemp v. Wilmington, 9 Rich. Law, 84.)

II. It is objected by the defendant that the plaintiffs were guilty of negligence in permitting their child to go out of the house in the open air and sunshine without a nurse, or attendant.  (1 Hill. on Torts, 162, § 17, et seq.)  The common sympathies of mankind are endorsed in these words: "The plaintiff is only bound to exercise care and prudence equal to his capacity."  "Thus, although a child of ten years may be in the highway through the fault and negligence of his parents, yet if injured through the negligence of the defendant, he is not precluded from his redress." (Robinson v. Cone, 22 Vt. 213; Buge v. Gardiner, 19 Conn. 507; Oldfield v. New York, &c., 3 E. D. Smith, 103; Lynch v. Nardin, 41 Eng. Com. L. 422; Adams et als. v. Wiggins' Ferry Co. 27 Mo. 95.)

The only case relied on by defendant, is Hartfield v. Roper, 21 Wend. 617, which is commented on; 1 Hill. on Torts, 166; Payne v. Smith, 4 Dana, 497.)  The general principle that one party cannot recover damages from another when both are in fault, or in *pari delicto*, has these exceptions:

1. Although there may have been negligence on the part of the plaintiff, yet unless he might by the exercise of ordinary care have avoided the consequence of the defendant's negligence, he is entitled to recover.

2. All the consequences that may flow from wrongful or negligent acts must be borne by the party guilty of them, and he is not relieved from responsibility that the consequences of the injurious act could have been prevented by the skill or care of the injured person.

3. The injured person, although in fault to some extent,

may be entitled to damages for an injury which could not have been avoided by ordinary care on his part.

4. Where the negligence of the defendant is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or omission, not occurring at the time of the injury.

5. Where a party has in his custody, or control, dangerous implements or means of injury, and negligently uses them or places them in a situation unsafe to others, and another person—although at the time even in the commission of a trespass, or otherwise somewhat in the wrong—sustains an injury. (Cook v. Champlain, 1 Denio, 91.)

These two maxims fix the responsibility of the defendant for this injury.

*Glover & Shepley*, for defendant in error.

I. The plaintiff must show that injury was not occasioned by his own negligence. (Boland and wife v. Missouri R.R. 33 Mo. 311; 19 Wend. 400; 5 Carr. & P., 375; 6 *id.* 23; 3 *id.* 23; 21 Wend. 615; 2 Hall, 131; 5 C. & P. 375; 8 *id.* 373; 6 Hill. 592; 9 C. & P. 601; 1 Cromp. & Mee. 21; 3 Mee. & W. 244; 10 *id.* 546; 12 Pick. 177; 23 Conn. 441–4.)

The plaintiff must show the injury was not caused wholly or in part by his negligence. (21 Barb. 339; 5 *id.* 337; 13 *id.* 9–16; 14 *id.* 584; 6 Cow. 191; 23 Penn. S. R. 147; 1 Dutcher, 556–7; 12 Metc. 415; 1 E. D. Smith, 74; 12 Peck. 177; 11 East. 61; 6 Whea. 325.)

II. There was no negligence shown on the part of the defendant; none on the part of its agents. The car was moving slowly; the driver's attention was directed to the other side of the street, looking out for a threatened collision on that side, and holding his hand on the brake; most certainly the driver did not see the child, and had no right to suppose a child of two years old would be there. As soon as the alarm was given the driver stopped. There was no proof of ordinary care on the part of plaintiffs.

If there was want of ordinary care on the part of plaintiffs they could not recover. The burden of proof was on them to show ordinary care. They did not show the least care. There were, then, two reasons for forbidding recovery: 1. The absence of any proof of defendant's negligence. 2. The absence of any proof of ordinary care by plaintiffs.

WAGNER, Judge, delivered the opinion of the court.

This was a suit under the statute, commenced by the plaintiffs against defendant, to recover damages for the killing of their daughter, a child aged about two years. From the record, we gather these facts: The little child, unattended, was walking across Market street, over the paved crossing, on the west side of Fifth street, one of the most public thoroughfares in the city of St. Louis, and at the same time defendant's horse car was going west over Fifth street on Market street. The child was proceeding in a fast walk and the by-standers, seeing her danger, cried aloud to the driver to stop the car; but the driver's attention being turned in another direction, he did not stop till the child was run over and killed.

C. B. Wardrop testified for the plaintiffs: " I was crossing Fifth street going west, out Market street ; the horse-car was going out also; I was north of the horse-car track. I saw the little child start from the curb to go from the north-west to the south-west corner of Market and Fifth streets, on the paving across the street, and I ran toward the car as fast as I could *hallooing* to the driver to stop, and another man just ahead of me was hallooing, and ran towards the car; the driver's attention seemed to be called to the opposite side of the street. The car continued going on, and the child's head struck the front point of the steps and the wheel passed over its body. The child was three or four feet from the car when I hallooed; the car was going at a very slow walk; the horses did not touch the child. I think the step of the car above struck the child; I think the corner of the step touched the child ; it fell forwards straight across the track;

the child at the time I hallooed was five or six feet from the driver, the driver standing at the brake at the right of the platform where the child was struck. There was a wagon standing near the corner on the south side of street, and the driver had the brake in his hand, and seemed to fear a collision with the wagon. I can't say which went faster, the child or the car; the child went between a run and a walk, as fast as children usually toddle. I ran as far as the east end of the car, where the child was run over. If the driver had been looking towards the child at the time, I think he could have stopped the car; the other man was near me and hallooed about the same time I did. I heard the child make a noise when the car struck it; it threw its arms back when it was picked up; I can't say whether the child lived or died, for I went away after the child was picked up."

Defendant admitted that the child was killed.

On cross-examination, the witness stated : " The wagon on the south side of Market street was standing still; I think the eyes of the driver were upon the wagon; there had been rubbish there all the spring, between the wagon and the track. It seemed to me, then, that there was danger of a collision between the wagon and the car; it stopped directly upon the child; I think the driver stopped as soon as he could; the driver had his hand on the brake all the time ; the driver was going slow to prevent a collision. I don't think the driver saw the child until the car struck it; I cried out, 'Hold on, stop!' The driver stopped as soon as he could after he heard the cry 'hold on ;' the speed of the car determines the distance in which it can be stopped ; don't think it possible to tell how soon a car can be stopped. I saw no one attending the child ; it was a little infant child just about able to walk. I don't think the child ran on the crossing ; my impression is that the child did not run as fast as it could go ; it toddled across the street about as fast as a little child usually goes. I can't tell how long it was going across ; it might be a minute or a minute and a half before the car struck the child ; I went as fast as I could, and the

child was thrown down before I got to it. When I first saw the child, it was stepping from the curb-stone on the cross-ing; I don't think any relations appeared to claim the child; the man who took the child in his arms was a stranger to me. I don't know that it occurred to me at the time, that the driver did not stop as soon as he could; I think the dri-ver stopped as soon as he could; I looked directly at the driver, to see if he would stop for the child; he was looking at the wagon on the south side of Market street. He had his hand on the brake with his knee against the dash-board; I saw nobody that had charge of the child. I think the wagon was standing, but it might have been moving; if it was moving, it was a very slow motion. I can't say now, but I suppose I thought it moving when I gave my deposition. The corner of Fifth and Market streets is one of the most frequented thoroughfares in the city of St. Louis."

This was substantially all the evidence in regard to the killing. There was some other evidence given by the plain-tiffs in the cause, but it need not be noticed, as it does not alter or vary the above. When the plaintiffs rested, the de-fendants asked and the court gave the following instruction: " That on the evidence in this cause, the plaintiffs cannot re-cover."

Plaintiffs thereupon took a non-suit, and after an unavail-ing motion to set the same aside, bring the case here by writ of error.

It is argued by the counsel for the defendant, that permit-ting a child so young, and so obviously wanting in discretion, to go alone and unattended on a principal thoroughfare in a busy city, is such negligence as will preclude a recovery. Nothing can be plainer than that the plaintiffs cannot claim that they were without fault. The allowing of an infant of such tender years to go on the streets or open highways, amidst the many dangers to which she was exposed, without any one in attendance to afford her adequate protection, be-trayed culpable carelessness and inattention. But we are not to apply the same rigid rule in determining what will be

a bar to the maintenance of an action on the grounds of contributory negligence to an infant, an idiot, or a person *non compos mentis*, that we would to one who had arrived at the age to possess ordinary judgment and discretion.

All that is necessary to give a right of action to the plaintiff for an injury inflicted by the negligence of the defendant, is, that he should have exercised care and prudence equal to his capacity. It would be palpably unjust to require of a child of small capacity and little discretion the same precaution and prudence which might reasonably be expected of a person of elder years. If, therefore, any one using dangerous instruments, running machinery, or employing vehicles which are peculiarly hazardous, and he know that infants, idiots, or others who are bereft of, or have but imperfect discretion, are in close or immediate proximity, he will be compelled to the exercise of a degree of caution, skill and diligence, which would not be required in case of other persons.

It is true, Judge Cowen, in Hartfield v. Roper (21 Wend. 615), makes no distinction between the responsibility of infants and those who have grown up to years of discretion ; and he there held, that although a child, by reason of his tender age, be incapable of using that ordinary care which is required of a discreet and prudent person, yet the want of such care on the part of the parent or guardians of the child furnish the same answer to an action by the child, as would its omission on the part of the plaintiff in an action by an adult. Whilst the decision in Hartfield v. Roper may be supported by the facts in the case, as failing to show such negligence as would fix liability on the defendants, the reasoning of the learned judge on infantile responsibility is certainly harsh and repugnant to justice.

We think the doctrine enunciated by Judge Redfield much more sound and in entire consonance with justice and reason:—"And we are satisfied that although a child, or idiot, or lunatic, may to some extent have escaped into the highway through the fault or negligence of his keeper, and

so be improperly there ; yet, if he is hurt by the negligence of the defendant, he is not precluded from his redress. If one knows that such a person is in the highway, or on the railway, he is bound to a proportionate degree of watchfulness, and what would be but ordinary neglect in regard to one whom the defendant supposed a person of full age and capacity, would be *gross* neglect as to a child, or one known to be incapable of escaping danger." (Robinson v. Cone, 22 Vt. 213 ; Boss v. Littleton, 5 Car. & Payne, 407 ; Lynch v. Murdin, 1 Ad. & Ellis, N. S. 28.)

What is reasonable skill, proper care, caution, prudence or diligence, or what constitutes negligence, is strictly matter of fact, and can only be determined by a jury. The subject is so indefinite and variable in its very nature, that it is impossible to lay down or establish any precise rules. Every case must necessarily be governed by its own facts and circumstances.

But it is insisted in behalf of the plaintiffs in error, that the court below erred in giving the instruction that upon the evidence the plaintiffs could not recover. It is well established that when the testimony is all in one direction, or when all the evidence for the plaintiff has been given, and it has no tendency whatever to prove the particular issue relied on to recover, and there is no question in regard to the credibility of the witnesses who have given the evidence, the court may determine the whole case as a question of law. (Vinton v. Schwab, 32 Vt. 612.) The credibility of witnesses, and the weight of evidence, are for the jury ; but whether there is any evidence, or what its legal effect may be, is to be delivered by the court.

The instruction in this case is in the nature of a demurrer to evidence. It does not intermeddle with the facts, but admits their truth, and then pronounces the judgment of law that they are insufficient to support the action. (Harris v. Woods, 9 Mo. 112 ; Lee v. Davis, 11 Mo. 114 ; U. S. Bank v. Smith, 11 Wheat. 171.) By a demurrer to evidence the defendant takes the questions of fact from the jury

where they properly belong, and substitutes the court in the place of the jury; and every thing which could reasonably be inferred by the jury in favor of the plaintiff, arising out of his testimony, is to be taken as admitted by the defendant's demurrer. If he will take the cause from the usual and proper triers of the facts, and substitute another and different tribunal in their stead, every inference is to be made most strongly against him.

Now, by reference to the evidence, we think it clear there was no negligence shown by defendants or their agents. The attention of the driver of the car was directed to another point of the street, where he anticipated danger. He was driving slowly and cautiously, with his knee against the dashboard of the car, and his hand on the brake, to be ready in an instant to stop the car, and prevent damage in case the threatened collision took place. There is nothing whatever to show that he knew the child was approaching the car, or had any reason to apprehend the child was there. The witness states that the child was from three to five feet from the car when first discovered, and the alarm given, going directly ahead, and at rather a rapid rate. The driver stopped as soon as he could, but not till after the fatal accident had happened.

We see nothing in the facts, as detailed by the testimony, that can stamp him with negligence. The occurrence was one of those lamentable and painful misadventures which frequently happen, and are always to be regretted, but fails to evince any such criminal or blameworthy negligence as would make the defendant liable in damages.

The judgment is affirmed. Judge Holmes concurs; Judge Lovelace absent.