Callahan v. Warne et als.

———+·⊙·⊙·⊙+———

ROSANNA CALLAHAN, Respondent, v. MARINUS W. WARNE, JOSHUA CHEEVER AND MORTIMER N. BURCHARD, Appellants.

1. *Action — Negligence — Damages.* — No person can sustain an action for a wrong when he has himself consented or contributed to the act which occasioned his damage.
2. *Damages — Negligence—Action—Practice—Trials—Instructions.*—The existence of negligence is a fact to be proved, and for the jury to determine, when there is competent evidence tending to prove it; but the question, what facts and circumstances, being proved, amount to evidence of the existence of the main fact in issue, or tend to prove it, is a question of law. Where the evidence presented by plaintiff does not sustain the plaintiff's cause of action, it is the duty of the court so to instruct the jury.

*Appeal from St. Louis Circuit Court.*

*Krum, Decker & Krum,* for appellants.

I. The court below erred in refusing to give the first instruction asked by the defendants, namely, that upon the whole evidence the plaintiff was not entitled to recover.

This instruction was asked, at the close of the plaintiff's case, as in effect a demurrer to the evidence.

To make a *prima facie* case in this action, the plaintiff must have shown acts on the part of the defendants which led to the death of the plaintiff's husband, and that the latter could not have avoided his fate by exercising reasonable and ordinary care, The burden of proof was on the plaintiff —Lane v. Crombie, 12 Pick. 177.

Assuming that the defendants were guilty of negligence, if the evidence showed that the plaintiff's husband was also guilty of negligence, and that the mutual negligence was the proximate cause of the injury, the instruction asked should have been given—Trow v. Vt. Cent. R.R., 24 Vt. 487 ; Williams v. Mich. Cental R.R., 2 Mich. 259 ; Perkins v. Eastern R.R. et al., 29 Me. 307 ; Harrig v. N. Y. & Erie R.R., 13 Barb. 9 ; Rathburn v. Payne, 19 Wend. 399 ; Boland et ux. v. Mo. R.R., 36 Mo. 484 ; Boswell v. Flagler, 5 Hill. 282 ; Williams v. Holland, 6 C. & P. 23.

Assuming that the defendants were negligent if the plaintiff's evidence showed that her husband failed to exercise ordinary care, the instruction asked should have been given —Hill v. Warren, 2 Stark. 377 ; Holt v. Wilkes, 3 B. & Ald. 304 ; Jordin v. Crump, 8 M. & W. 782 ; Flower v. Adam, 2 Taunt. 314 ; Mench v. Concord R.R., 29 N. H. 9; Mayer et al. v. Mannt, 9 Md. 160 ; Munger v. Tonawanda R.R., 4 Comst. 349 ; Birge v. Gardiner, 19 Conn. 507 ; Neal v. Gillett et al., 23 Conn. 437 ; Lane v. Crombie, 12 Pick. 177 ; Smith v. Smith, 2 Pick. 621 ; Parker v. Adams, 12 Met. 415 ; Bens v. Housatonic R.R., 19 Conn. 566 ; Harlow v. Henniston, 6 Cow. 189–91 ; Noyer v. Morristown, 1 Vt. 353.

The plaintiff's evidence was all in one direction, proving the carelessness of Callahan and the appellants' innocence. The case comes within the rule of Boland v. Mo. R.R., 36 Mo. 484, and the instruction should have been given—Harris v. Woods, 9 Mo. 112; Lee v. Davis, 11 Mo. 114; U. S. Bank v. Smith, 11 Wheat. 171.

II. The verdict of the jury should be set aside, because it is not supported by evidence.

Plaintiff's proof is merely circumstantial. The statute giving the remedy is essentially penal in its nature. Evidence introduced in an action under such a statute, and particularly circumstantial evidence, must be governed by the strictest rules controlling the admissibility of such evidence.

The verdict having been supported by no evidence, it should be set aside—Heyneman v. Garneau, 33 Mo. 565 ;

Morris v. Barnes' adm'r, 35 Mo. 412 ; Nelson v. Boland, 31 Mo. 432.

*Bakewell & Farish*, for respondent.

I. The instructions refused were properly refused.

II. The instructions given correctly embodied the law of the case.

(Dixon v. Bell, 5 Maule & S. 198 ; Townsend v. Wathen, 9 East. 277 ; Bird v. Holbrook, 4 Bing. 628 ; Ilott v. Wilkes, 3 B. & Ald. 304; Blackman v. Simmons, 3 Carr. & P. 138 ; Thomas v. Winchester, 2 Seld., N. Y., 407 ; Bush v. Brainard, 8 Cow. 78; Johnson v. Patterson, 14 Conn. 1.)

HOLMES, Judge, delivered the opinion of the court.

The plaintiff brings this suit under the provisions of the " Act concerning damages "—R. C. 1855, p. 647.   The substance of the complaint was, that the defendants, carrying on the business of merchants in a general house-furnishing store in the building  No. 125 North Fourth street, in the  city of St. Louis, and whilst the plaintiff's husband was employed in repairing a sewer in the cellar  of the building and was lawfully passing and repassing through the same in and about his business, negligently, carelessly and wrongfully placed three large jars in said cellar, two of them containing water and one containing a  deadly liquid poison, which said jar of poison was of similar appearance to said  jars containing drinking water, with no mark or  notice to  indicate its contents or warn persons that it contained poison, or that its contents was not the same as those  of the two other placed beside it, and that by reason of said  gross negligence and carelessness, and wrongful acts and default of the defendants, the plaintiff's husband, mistaking said poison for drinking water, then and there drank of the same, and was poisoned and immediately killed; and the plaintiff claimed damages to the amount of ten thousand dollars.   (The statute limited the damages not to exceed five thousand dollars.) The answer denied that the deceased husband of the plaintiff

was employed by the defendants, or was there by their permission, or that they negligently and carelessly placed the jar of poison in the cellar without marks indicative of poison, as alleged, or by reason of their negligence the deceased drank of the poison.

At the close of the plaintiff's evidence the defendants asked the court to instruct the jury that the plaintiff was not entitled to recover on the case made. This instruction was refused. It was of the nature of a demurrer to the evidence, and will first be considered.

The facts shown by the plaintiff's evidence may be stated thus: that defendants were merchants carrying on business in this store rented from the owners, and that these three jars, the smaller one containing liquid *cyanate of potassium* and the two larger ones containing water, were used in the business for the purpose of cleansing and polishing silverware, and were usually kept in the cellar; that the jar containing poison was marked *poison*, in letters legible enough for any one to read who should look for a label, and had a *skull and cross-bones* emblems on the corner; that the deceased was employed, not by defendants, but by a contractor under an agent of the proprietors of the building, who had charge of repairs, and that they were allowed to pass through the store down into the cellar, through a basement and into an area, where a sewer was undergoing repairs; that when the work on the sewer began in the front area of the cellar, where stood a hydrant with a cup for drinking, these large earthen jars were standing against the wall of the basement, not far from the hydrant, but were removed out of the way of the workmen, before the deceased came into the cellar, by a person connected with the store, and taken into the basement part of the cellar and placed among some goods piled up there, a few feet to one side of the passage leading through the basement to the stairs which ascended into the store above, and where a laborer passing up and down about his business would not be likely to notice them particularly, unless he went out of his way to examine them; that the deceased had been en-

gaged at first in carrying brick from the street, through the store and down into the cellar, but afterwards passed the brick through a scuttle in the sidewalk, but, being again sent up through the store to get a hatchet, and while going on this errand, and when he had got about the distance of one square from the store, he was observed to fall down sick, suddenly overcome, and died in an hour, with all the symptoms of death by poison.

It is plain from the evidence, though not clearly shown by the petition, that the defendants and the deceased stood in no particular relation, or privity, with each other, but were in the simple position of strangers. The case, therefore, must be considered as falling under the principle of the general maxim, *sic utere tuo ut alienum non lœdas.* The cause of action is founded on alleged negligence of defendants, and the very gist of the action is that the negligence of the defendants caused the accident and produced the injury. The burden of proof is on the plaintiff, and if there be no evidence sufficient in law to make a *prima facie* case on this issue, plaintiff cannot be entitled to recover—Smith v. Hann. & St. Jo. R.R. Co., 37 Mo. 287 ; Boland v. Mo. R.R. Co., 36 Mo. 491.

It is to be observed, in the first place, that the evidence disproves a part of the allegations or assumptions of the petition. It not only fails to show that the deceased was employed by the defendants, or specially permitted by them to be there, or that he had any lawful occasion to meddle with those jars, or that the jars were placed in the cellar for any purpose of injuring trespassers or others, or were put where they were with any other reference whatever to the deceased than to place them out of the way of the workmen employed there, or that they were without visible marks indicative of poison, or that the deceased supposed the jars to contain water for drinking ; but rather proves, or tends to prove, the direct contrary of all this.

The question to be determined is, whether as a matter of law, admitting all the facts and circumstances to be true

which are by this evidence shown to have existed, there was such proof before the jury as would warrant them in refering the existence of the main fact in issue, namely, a negligence on the part of the defendants, which caused the accident and produced the injury; and there is involved in this inquiry a subordinate question of law, namely, the existence of negligence or unskilfulness on the part of deceased himself, being also the immediate and proximate cause of the accident and injury, which by ordinary care he might have avoided. If the evidence offered does not amount to any proof of such negligence on the part of the defendants, or if, showing some negligence on their part, having only a remote bearing on the accident, it does also amount to proof that the negligence of the deceased was the proximate cause of accident and injury, then no action could be maintained; for it is a settled principle of both English and American law, that no one can maintain an action for a wrong, where he has consented or contributed to the act which occasions his damage—Broom's Max. 170; Trow v. Vt. Cent. R.R. Co., 24 Vt. 487.

The existence of negligence is a fact to be proved, and for the jury to determine, when there is any competent evidence tending to prove it. But the question, what constitutes that fact, in any given case? or rather, what other facts and circumstances, being proved, amount to evidence of the existence of the main fact in issue, or tend to prove it? is, and must be, a question of law. Negligence is a thing which by its very nature pertains to human conduct, and the action of the mind and will. It is a something, invisible, intangible, and for the most part incapable of direct proof, like sensible facts, or physical events. It is, in general, a matter of inference from other facts and circumstances which admit of direct proof, and which may raise a presumption of the truth of the main fact to be proved. These facts and circumstances must be such as would warrant a jury in inferring from them the fact of negligence, by reasoning in the ordinary way, according to the natural and proper relations of things,

Callahan v. Warne et als.

and consistently with the common sense and experience of mankind—1 Greenl. Ev. §§ 44, 48 ; Smith v. Hann. & St. Jo. R.R. Co., 37 Mo. 292.   A jury is not to be left or permitted to act or reason in any other way on such facts. Where it is plain that the jury could not find a verdict on the evidence offered without reasoning irrationally, against all ordinary common sense, and against all proper notions of justice and right, or against law, or without being influenced by undue sympathy, prejudice, gross mis-judgment or mistaken impression of the law and facts of the case, the court will declare, as a matter of law, that there is no competent evidence to be submitted to the jury. This rule was distinctly laid down in Boland v. Mo. R.R. Co., 36 Mo. 491, and is too well established to require the citation of authorities. Whether there is any evidence, or what its legal effect may be, is to be declared by the court.

It has been decided, also, that it is proper for the defendant to take the judgment of the court on the plaintiff's evidence by an instruction of this kind.   The plaintiff cannot be directly compelled to take non-suit ; but if he will insist upon going to the jury, the court may instruct them, in such case, that there is no sufficient evidence before them to sustain the plaintiff's action, and that they will find a verdict for defendant—Clark v. Hann. & St. Jo. R.R. Co., 36 Mo. 216.

With reference to the defendants, it appears that this poisonous liquid was intended for ordinary use in their business, and was kept in the cellar, where no other persons than those employed about the store were ordinarily permitted to go, or were in the habit of going.   Where a man built a hay-rick of green grass near to another's land, knowing it would probably take fire, and saying he would take the chance, it was held that an action would lie, for he knew, or had reason to believe, it might do damage to his neighbor.   Where a shopkeeper invited customers to his store and left a trap-door open where he might expect they would fall into it, that was held to be negligence.   What reason had these defendants to expect that anybody would drink out of this jar ?   It was

not placed there with a view to the injury of other persons, trespassers or otherwise, with or without notice of the danger. The cases of man-traps and spring-guns, therefore, afford little analogy and have no application here. It is said that instruments of danger are to be kept with the utmost care. This is an exception to the general rule under the maxim where only ordinary care is required of either party, and where the proper criterion is gross negligence, viewing conduct with reference to the caution of a prudent man. Of course, a careful and prudent man will be expected to take more care of things dangerous than of things not dangerous in their nature. There are not only different degrees of negligence, but it is always, in some measure, relative to the particular case. Where the utmost or greatest possible care and diligence are required, as in the carrying of passengers by the dangerous agency of steam, a learned judge has said that any degree of negligence might well deserve the epithet of *gross;* but even these cases must be considered with reference to the nature and peril of the business, and can scarcely mean anything more than such care, prudence and foresight as prudent and careful men may reasonably be expected to exercise in like cases and under like circumstances of danger—Sawyer v. Hann. & St. Jo. R.R. Co., 37 Mo. 260. In one of the examples usually given of this utmost care, Lord Denman said, "I am guilty of negligence in having anything dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third." He was speaking of the case of a man leaving his horse and cart in a street, where a child, playing about the cart, was injured by the starting of the horse by the aid of another person. Should a jar of poison be kept unlabelled, or in a place where it would be in any way probable that another person night mistake it for something else, it might well be deemed a want of the utmost care and gross negligence. But here this poison was kept where it would be extremely improbable that any person not acquainted with the use of

the jars would fall upon it, and the jar was marked with the signs of poison on the sides and cover in a way sufficient to warn any one but the most careless explorer of its dangerous character. It is not easy to imagine what greater care could reasonably have been required of these defendants, unless he were to lay down a rule that would absolutely forbid the use of such articles in any manner.

On the supposition that it would be a matter of fact of which the jury were to be left to judge, under all the facts and circumstances, whether the conduct of the defendants had been such as would ordinarily be expected of careful and prudent men in like case, and that the jury might, by any rational probability, have found that there had been some slight degree of negligence on their part, it is still perfectly clear, on this evidence, that any such negligence must have been, and was, only the remote cause of the accident and injury, and it is still to be considered what was the immediate and proximate cause of this very singular mischance.

It is evident that this laborer had no business to be meddling with those jars; that he must have turned aside out of his way to reach them; that he had a mere privilege of passing to and fro through the basement on this special occasion, and was a trespasser upon the property of another; that if he really drank of that poison (as would seem to be highly probable), he did so without the least examination for marks on the jar or on the cover; that there were marks on both, indicative of poison, and which would have been a sufficient warning for any one that had looked for them; that he might have avoided all danger by the exercise of that ordinary care which might reasonably be expected of any person of common sense and prudence in his situation; and, in short, that he was himself guilty of gross negligence and reckless imprudence.

It is suggested that he supposed the jars to contain water for drinking. The evidence affords no substantial grounds for this hypothesis, but rather shows the contrary. It distinctly appears that there was a hydrant standing in the area

of the cellar, in full sight where the men were at work, with a drinking cup hanging near, where, if he had been thirsty for water, he might have drank in perfect safety. That he should pass by this hydrant, turn out of his way to explore the contents of these jars, select the smaller jar marked with the signs of poison, lift the cover with the emblems of death upon it, dip out or somehow get at the nauseous, stinking liquid, and actually mistake *cyanate* of *potassium* for a wholesome drink, is so extraordinary and unaccountable as to be almost inconceivable. The conclusion would seem to be irresistible, for one thing, that he must have been in search of something stronger than water and much in a hurry; and for another, that his own carelessness and imprudence were the proximate and real cause of the accident, and that he fell a victim to his own folly. Or, if it be imaginable that he was innocently looking for water, and proceeded with anything like ordinary care, his fate, however deplorable, would still have to be considered as no more than the result of pure accident or misadventure, where no greater blame was imputable to any other person than to himself. In either case no action can be maintained.

The result is that the plaintiff's evidence failed to make out a *prima facie* case of liability against the defendants, and the jury should have been instructed that the plaintiff was not entitled to recover.

Reversed and remanded. The other judges concurring.