MATILDA PONTIUS, Administratrix of the Estate of DANIEL PONTIUS, Deceased, Appellant. v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO., Respondent.

### Kansas City Court of Appeals, November 3, 1913.

1. **NEGLIGENCE: Railroads: Overhead Crossing.** Where a railroad crosses or runs parallel to a public road or street the trainmen owe no duty to refrain from making usual and necessary noises incident to the proper and safe operation of a train but to be within the bounds of reasonable care, which is the test of duty, must not operate it in an unusual or unnecessary way and thereby endanger the safety of travelers on the highway.

2. ————: ————: ————: **Negligence per se.** It is not negligence *per se* for the whistle of a running locomotive to be sounded under a highway bridge, but engineers should not sound the whistle, when passing under a bridge where horses and vehicles are likely to be passing over at any time.

Appeal from Grundy Circiut Court.—*Hon. Geo. W. Wannamaker,* Judge.

AFFIRMED.

*Platt Hubbell* and *George Hubbell* for appellant.

*Paul E. Walker, E. M. Harber* and *E. R. Sheetz* for respondent.

JOHNSON, J.—Daniel Pontius began this action in 1905, in the circuit court of Grundy county, to recover damages for personal injuries he alleged were caused by negligence of defendant in frightening a mare he was driving on one of the public streets of the city of Trenton and causing her to run away. Defendant demurred to the petition on the ground that it failed to state a cause of action but the demurrer was overruled and defendant answered with a general traverse and a plea of contributory negligence. The trial occurred in June, 1906, and resulted in a verdict and judgment for defendant. Pontius filed a motion for a new trial in proper time but the cause was continued from term to term and the motion was not heard until February, 1911, when it was overruled. In the meantime Pontius died and at the September, 1910, term the court entered an order reviving the action in the name of the administratrix of his estate. She filed a motion in arrest of judgment which was heard with the motion for a new trial and overruled. An appeal was allowed but on account of delay in preparing and filing the bill of exceptions the cause could not be heard in this court until the present term. The administratrix died in January, 1913, and was succeeded by Jacob Pontius who was appointed administrator *de bonis non* of the estate of Daniel Pontius and by stipulation of the parties was substituted as party plaintiff.

At the time of his injury which occurred in the afternoon of September 27, 1905, Pontius was driving westward on Bridge street in a single buggy drawn by his mare which was accompanied by her young colt. Defendant's railroad crosses this street in a cut twenty-two feet deep which is spanned by a bridge seventy feet long and forty feet wide. Trenton is a division station and defendant's railroad yards at that place are extensive and have their north terminal near the overhead bridge described. A southbound freight

174 Mo. App.—37

train, consisting of a locomotive, thirty-three cars and a caboose, had stopped at a place in the cut where smoke from the locomotive came up through the bridge. The engineer had been compelled to stop the train to wait for a clear track into the yards and had signalled the rear brakeman to go back along the track a sufficient distance to flag any train that might be following. There is a sharp controversy in the evidence over the position of the locomotive while the train was stationary. Pontius testified that it stood under the bridge while the trainmen stated that it was about one hundred feet north of the bridge. In our view of the case the exact location of the engine in the cut is not a fact of vital importance. It was either under the bridge or so close to it that blasts upon its whistle would be and, in fact were, terrifying to horses which had been stopped by their drivers at or near the bridge awaiting the removal of the locomotive which on account of the noise and ascending smoke, made driving over the bridge unsafe and dangerous. While the train was standing a switch engine came from the south and was attached to the freight engine to help pull the train into the yards. This operation of the switch engine added to the noise and increased the volume of smoke that ascended through the bridge. When the engineer of the freight engine received a signal to proceed into the yards he sounded five blasts of the whistle as the customary signal to recall the rear brakeman who found it necessary, in order to prevent a possible collision, to go back on the track three quarters of a mile.

Pontius came from the east while the train was standing in the cut and in common with other drivers of teams and horses going in the same direction stopped near the east end of the bridge and waited ten minutes or more for the train to go on. His mare, which was gentle and well broken but somewhat spirited, became uneasy and restive at the sights and sounds

coming from the engines in the cut but he had no diffi-
culty in controlling her until the whistle sounded the
signal recalling the rear brakeman. At the second blast
she became unmanageable and ran away inflicting the
injuries of present concern.

The petition alleges ''the plaintiff, then and there,
approached the said overhead bridge of said street and
stopped on the east side and within several feet of said
overhead bridge, where one of defendant's locomotive
engines was under and passing under said bridge. The
defendant through its servants and agents then and
there negligently caused the steam whistle of said en-
gine to blow and emit several loud, shrill blasts, which
blasts of said steam whistle instantly frightened the
plaintiff's horse and said horse thereby became sud-
denly terror stricken and unmanageable, and ran away,
jumped down a rock embankment, turned the buggy
over, threw the plaintiff out of the buggy onto a brick
pavement thereby inflicting grievous personal injuries
to plaintiff,'' etc.

Counsel for defendant in answer to the contention
of their opponents that numerous errors prejudicial.
to plaintiff were committed at the trial argue that since
the petition omits to allege that the act of sounding
the whistle under the bridge was unnecessary, it fails
to include an essential element of a good cause of ac-
tion and is so vitally defective that the court erred in
overruling the demurrer and in overruling the subse-
quent objection offered at the trial against the intro-
duction of any evidence. And on the hypothesis that
the evidence when considered in its phase most favor-
able to plaintiff fails to show that the whistling was
unnecessary to the proper operation of the train, coun-
sel further insist that the demurrer to the evidence
asked by defendant should have been given. On the
other hand the sufficiency of the petition and of plain-
tiff's evidence to take the case to the jury are predi-
cated by counsel for plaintiff upon the theory that the

pleaded and proved fact of whistling under the bridge, of itself, bespeaks a negligent breach by defendant of a duty it owed travelers on the public highway of which the bridge was a part and imposed the burden upon defendant of showing that such an act was indispensable to the proper operation of the train.

The gist of the action is a negligent breach of duty defendant owed to Pontius and the burden of pleading and proving such actionable negligence remained with the plaintiff to the end of the case. If an act resulting in an injury is of such a nature that all reasonable minds would unite in pronouncing it a culpable breach of duty, it is negligence in law. "Negligence is always a question for the jury when there is any doubt as to the facts or as to the inferences to be drawn from them," (Railroad v. Barnett, 59 Pa. St. 259), but is a question of law where no such doubt appears and where, as stated, the established facts leave no room for an honest difference of opinion among reasonable minds. If the mere act of sounding the whistle under the bridge in any event and under any circumstances was *per se* negligence, i. e., negligence in law, plaintiff discharged his burden of proof in showing that such act was the proximate cause of the injury of Pontius and the court did not err in overruling the demurrer to the evidence; but if such act was prompted by a necessity for its performance in the proper operation of the train, plaintiff has failed to make out a case to go to the jury, since he has failed to show one of the constitutive facts of a good cause, viz., that the act was unnecessary.

It does not appear and is not charged that the train was stopped at an improper place. It was seeking admittance to the yards and could not go on until a clear track was prepared for it. The rules of the company, as well as the obvious and most peremptory necessities of the situation, required the engineer to signal the rear brakeman to go back on the track for

the protection of life and property. That signal consisted of four blasts of the whistle which were given before Pontius arrived at the east end of the bridge. It was just as necessary to the proper operation of the train to call back the brakeman when the train was ready to proceed as it was to send him out and if the engineer was negligent in giving one signal he was negligent in giving the other. That both signals were necessary is a fact about which there can be no dispute. They were the only adequate means the engineer had for communicating with trainmen and others connected with the operation of the train and to hold that he had to refrain from using them because of his duty towards travelers waiting to use the bridge would be to place that duty above the duty to properly operate and protect his train and to prevent it from coming into collision with other trains. The law in this State gives superiority to the latter duty. Where a railroad crosses or runs parallel to a public road or street the trainmen owe no duty of refraining from making usual and necessary noises incident to the proper and safe operation of a train but to be within the bounds of reasonable care, which is the test of duty, must not operate it in an unusual or unnecessary way and thereby endanger the safety of travelers on the highway. [Brown v. Railway, 89 Mo. App. 192; Feeney v. Railroad, 123 Mo. App. 420; Phelan v. Paving Co., 227 Mo. l. c. 708.] The controlling question, therefore, in every case of this character is whether the injury was caused by an unusual or unnecessary manipulation of the train and the burden is on the plaintiff to show by proof that the injurious act was unusual or unnecessary. As is well said by the Supreme Court of Pennsylvania in Farley v. Harris, 186 Pa. St. l. c. 442: "An act, in itself lawful, and which may have been prompted by the exercise of care, yet which incidentally results in injury to another, does not justify an inference of negligence. To hold otherwise would cast on every steam railroad

and factory the burden of proving in every case where a horse was startled by a steam whistle, that the use of it at that particular juncture was not negligence, but for a proper purpose; thus, in effect, raising a presumption of negligence against a defendant from the mere use of an entirely lawful appliance. Concede, as we do concede, in all its force, the principle that an act, in itself lawful, may be negligently performed, nevertheless, if negligent performance be averred, it must be proved. It will not be presumed from the mere fact of injury to another.''

In that case it was held that it is not negligence *per se* for the whistle of a running locomotive to be sounded under a highway bridge. In Brown v. Railway, supra, we observed by way of illustration, that engineers should not sound the whistle "when passing under a bridge where horses and vehicles are likely to be passing over at any time," and the Supreme Court of Tennessee expressed the same view in Mitchell v. Railroad, 100 Tenn. 329, in a case where the whistle of a running train was sounded under a bridge and frightened a team that was being driven across. We quote from the opinion (l. c. 332): "Ordinarily the use of a whistle is of machinery and appliance necessary for many practical purposes, and where used under ordinary circumstances, no inference of negligence could be drawn, but it is obvious that a blowing under a bridge is, in the absence of some special necessity therefor, an unnatural and reckless act, liable to cause great damage, and the circumstances and surroundings call, therefore, for proof of its necessity when the act occasions the damage to be anticipated. The proof of such a blowing under such circumstances is sufficient to authorize the presumption of negligence. The onus is shifted, to explain and justify or excuse it, upon him who does it. This burden may be successfully carried, but it cannot be avoided by demurrer to plaintiff's evidence establishing the act.''

In effect the rule announced in these two cases is that an inference of negligence may be indulged by the triers of fact from the act of an engineer of a running train in surprising teams crossing an overhead bridge with terrifying blasts from the locomotive whistle emitted under the bridge. On the face of it such an act ordinarily would seem to be unnecessary and to denote a disregard for the rights of others, though there might be some sudden emergency, such as the discovery of animals on the track, that would make its performance imperative, in which event it could not be regarded as negligence under our ruling in the Brown case. However this may be, the present case does not fall within the scope of that rule and there is nothing in its facts from which an inference of negligence may be indulged. This heavy freight train had been stationary for more than ten minutes. There was no one on the bridge nor had the engineer any reason to anticipate that anyone would be surprised there by the blowing of a signal which was necessary to be given. To say that the engineer might not use the whistle, the only means available, to send out and call back the rear brakeman without being guilty of negligence, would be to deny the existence of his duty to properly protect his train and any other that might be following it. The injury of Pontius is shown conclusively to have been caused by one of the ordinary risks of a proper operation of a train over a road crossing, which he should have anticipated and might have avoided.

It is not necessary to decide whether or not the petition would be sufficient to support a verdict. The evidence shows plaintiff has no case and the learned trial judge would not have erred had he sustained the demurrer to the evidence. With the case in such posture the errors assigned by plaintiff are immaterial as is also the point made by counsel for defendant against the order reviving the cause.

The judgment is affirmed. All concur.