## C. W. RIGER, Respondent, v. M. E. LEMING LUMBER COMPANY, Appellant.

Springfield Court of Appeals, January 14, 1922.

1. **MASTER AND SERVANT: No Presumption of Negligence.** Mere fact that an employee was injured raises no presumption of negligence.

2. **TRIAL: Plaintiff's Evidence Accepted as True on Demurrer to Evidence.** On demurrer to the evidence, plaintiff's evidence is accepted as true, as well as every reasonable inference deducible therefrom.

3. **NEGLIGENCE: May be Inferred from Facts in Evidence.** Negligence is not susceptible of direct proof, but is an inference from facts in evidence.

4. ———: **Question for Jury.** If the minds of reasonable men may differ as to whether or not negligence may be inferred from the facts in evidence, then the question is for the jury.

5. **MASTER AND SERVANT: Duty to Furnish Reasonably Safe Appliances.** It is the duty of a master to use ordinary care to furnish his servant with reasonably safe appliances with which to work.

6. ———: **Injury by Flying Piece of Wire Cable Cut by Chisel, Held not Actionable.** Injury to servant struck in the eye by a small piece of a strand of a wire cable while cutting it with a chisel to release it from tongs to which it was tied, *held* not to justify a charge of negligence against the master.

7. ———: **Anticipation of Injury by Defective Appliance Essential to Liability.** A case was not made out against a master by showing the

defective and rusty condition of a wire cable used in hauling logs, which plaintiff was attempting to cut with a chisel when a piece of wire struck him in the eye, but plaintiff must go further and show that an ordinarily prudent man, occupying the position of his employer, would or should have anticipated that injury would be the probable result if plaintiff undertook to cut the cable in the manner he attempted.

Appeal from the Circuit Court of Bollinger County.— *Hon. Peter H. Huck,* Judge.

REVERSED.

*Oliver & Oliver* for appellant.

(1) Plaintiff's petition fails to state a cause of action against defendant. It neither alleges that the tools with which plaintiff worked were defective nor that the place furnished him to work was unsafe. To recover, one condition or the other must be pleaded and proved. Modlagl v. Iron & Foundry Co., 248 Mo. 587, l. c. 602-3. (2) Defendant's demurrer at the close of plaintiff's case should have been sustained. Plaintiff's evidence fails to show any defect whatever in the simple tools with which he worked—a hammer and cold chisel— and also failed to show that the place where he worked was in any way unsafe. He chose his own work, performed it in his own way, and with tools which he himself chose, at noon day and out of doors. The testimony offered by plaintiff shows that a sliver was just as liable to fly from a new cable as from an old one. Abs. p. 26; Kellerman v. Telephone Co., 189 Mo. App. 506, l. c. 511; Coin v. Lounge Co., 222 Mo. 488; Lowe v. Railroad, 265 Mo. 587; Modagl v. Iron & Foundry Co., 248 Mo. 587; Bennett v. Crystal Co., 146 Mo. App. 565; Harris v. Railway, 146 Mo. App. 524; Forbes v. Dunnavant, 198 Mo. 193. (3) Defendant's demurrer at the close of the whole case should have been sustained. No act of negligence was proven against defendant, and recovery must be had, if at all, upon proof of specific acts of negligence

alleged. There was not one word of testimony proved or tended to prove that either the hammer or chisel were in any way defective. Practically every witness testified (and no witness denied it) that the cable was a good one, suitable for the purpose for which it was being used and that a sliver was just as apt to fly from a new cable as from an old one. The hammer and chisel were the only tools with which he worked and the cable was the only appliance on which he worked. The tools were simple and so was the appliance. McManawee v. Railroad, 135 Mo. 440, l. c. 447; Hennerker v. Beetz, 217 S. W. 533; Kellerman v. Telephone Co., 189 Mo. App. 506; Neil v. Prior, 180 S. W. 407 (Mo. App.); Miller v. Railroad, 175 Mo. App. 349; Railroad v. Burton, 211 S. W. 186. (4)  The burden of plaintiff's petition is that the cable which plaintiff cut in two was old, rotten and brittle. His own witness (as well as defendant's witnesses) testified that slivers were just as liable to fly from a new cable as from this one. In addition to this the condition of the cable was as obvious to plaintiff as to defendant and plaintiff's own witness testified that no one could, by a reasonably careful inspection of the cable, tell whether slivers would fly from it or not. The knowledge of the plaintiff was equal to that of the defendant with respect to the condition of the cable. Abs., pp. 26, 27; Pulley v. Oil Co., 136 Mo. App. 172; Epperson v. Cable Co., 155 Mo. 346, l. c. 376-8; Modlagl v. Iron & Foundry Co., 248 Mo. 587.  (5)  Supposing the cable was "rotten and brittle" (and all the testimony shows it was not) still plaintiff cannot recover, because such a rotten and brittle condition was not shown to be the proximate cause of plaintiff's injury. Slivers were just as liable to fly from a new cable as from the one on which plaintiff was working. Abs. pp. 26, 27, 31, 37, 41.  (6)  To succeed, the plaintiff must have proved the specific defects he alleged—that the cable was rotten and britle—and then have also proved that that condition was the proximate cause of his injury. That is elementary in the law of damages for personal injury. In this case he proved neither. Giles

v. Railroad, 212 S. W. (Mo.) 874; McCarty v. Hotel Co., 144 Mo. 397, l. c. 402; Heneker v. Beetz, 217 S. W. 553; Waldhier v. Railroad, 71 Mo. 514; McMenamee v. Railroad, 135 Mo. 440, l. c. 447. (7) The cutting of this cable was a job for two or three men. Plaintiff does not deny that, but he declined and shunned the offer of witness McClendon to assist him. He chose the method by which the work was to be done and worked with simple tools, he thereby assumed the risks incident to it. An employer does not assume risks caused by his employee's negligence, but he does "assume the risks which are liable to happen on account of the nature of the employment when the employer has used reasonable care to avoid that result." Powers v. Loose-Wiles Co., 195 Mo. App. 430; Tallman v. Nelson, 141 Mo. App. 478; Whellan v. Zinc & Chemical Co.; 188 Mo. 603-4; Oxford v. Dudley, 217, l. c. 608; Kaemmerer v. St. Louis Axle Co., 196 S. W. 439, l. c. 442-3; Roberts v. Telephone Co., 166 Mo. 370, l. c. 378. (8) The master is not an insurer against either accident or injury. "The master need not either actually or constructively hover over every transaction to keep the servant from hurting himself at his work by an act sounding to folly. He may rest somewhat on the fact that the servant has eyes, reasoning faculties, experience, knowledge in his trade. The master pays him to use them all. So the servant, in the very act of hiring, agrees that he will." Forbes v. Dunnavant, 198 Mo. l. c. 209; Trainer v. Mining Co., 243 Mo. 359, l. c. 373; Miller v. Railroad, 175 Mo. App. 349; Pulley v. Oil Co., 136 Mo. App. 172; Lowe v. Railroad, 165 Mo. App. 523; Coin v. Lounge Co., 222 Mo. 488.

*Wm. Morgan* and *Wammock & Welborn* for respondent.

(1) In passing on a demurrer to the evidence the plaintiff's evidence is to be taken as true and he is to be allowed every favorable and reasonable inference arising from the evidence. Maginnis v. Mo. Pacific Ry.

Co., 268 Mo. 667; Link v. Hamlin, 270 Mo. 319; Binga-
man v. Hannah, 270 Mo. 611.  (2)  If the minds of reason-
able men may differ upon whether or not negligence may
be inferred from what is shown by the testimony when
viewed in the most favorable light for the plaintiff, the
question of whether or not negligence may be inferred
from such testimony is for the jury.  The same rules
apply in allowing the jury to determine whether or not
the injury is the proximate cause of the negligence
which has been proven, or which may be inferred from
the evidence.  Hegberg v. St. Louis and San Francisco
Ry. Co., 164 Mo. App. 514; Power v. Wabash R. R. Co.,
244 Mo. 1; Pontius v. Railway Co., 174 Mo. App. 576;
Hawkins v. Mo. Pacific Ry. Co., 182 Mo. App. 323; John-
son & Co. v. Springfield I. & F., etc. Co., 143 Mo. App.
456.  (3)  The master must use ordinary care in furnish-
ing reasonably safe appliances with which his servant
is to work, whether such appliances be simple or other-
wise.  Powell v. Walker, 195 Mo. App. 150; Williams v.
Pryor, 272 Mo. 613.  (4)  The servant does not assume
risk arising from the master's negligence.  Johnson v.
Brick Co., 276 Mo. 42; Bradshaw v. Lusk, 195 Mo. App.
201; Humphrey v. Lusk, 196 Mo. App. 442; Young v.
Lusk, 268 Mo. 625; Walsh v. Quarry and Construction Co.,
205 Mo. App. 159.  (5)  Liability for negligence does not
hinge on whether by reasonable prudence the very in-
jury complained of should have been foreseen, but a
party may be held for anything, which, after the injury
is complete, appears to have been a natural and probable
consequence of his act or omission.  Benton v. City of
St. Louis, 248 Mo. 98; Kupferle Co. v. Railway Co., 275
Mo. 457.  (6)  Appellant is not entitled to have his
motion for new trial sustained on the ground of newly
discovered evidence.  Sang v. St. Louis, 262 Mo. 467;
Lyons v. Railroad, 253 Mo. 162; Devoy v. St. Louis
Transit Co., 192 Mo. 197.

BRADLEY, J.—This is an action for personal in-
jury.  The cause was tried below to a jury, and verdict

and judgment went in favor of plaintiff for $5000. Motions for new trial and in arrest were overruled, and defendant appealed.

Plaintiff was employed by defendant at Remoc in Bollinger County, and was engaged in loading logs from the ground onto cars. The loading outfit was on a spur or switch adjacent to the railroad. The loading was carried on by steam power, wire cable, tongs, etc. A car of coal was placed on a switch leading to the loader, and in order to unload this car of coal it was necessary to move it down the switch to the coal bin. To do this the wire cable, the tongs and a pulley attached to the car of coal were used. The tongs were made fast to a stump and the cable passed through the attached pully and then fastened to one of defendant's engines on adjacent logging track. The cable was fastened to the tongs by being tied to the ring thereof. The force exerted on the cable drew the knot in the cable at the tongs' ring so tight that it could not be loosened except by cutting the cable. After the car of coal was moved, plaintiff laid the knot in the cable on a railroad rail, and with a cold chisel and a hammer was attempting to cut the cable to release the tongs. While so engaged and after plaintiff had made four or five licks a small piece of severed wire about a quarter of an inch in length struck plaintiff in the left eye and totally destroyed the sight thereof.

Plaintiff alleges that defendant's foreman directed him to cut the cable and that said cable where plaintiff attempted to cut it was rotten and brittle. Omitting some preliminaries the petition alleges: ''That the said iron cable was old and at the end in which the said knot was tied as aforesaid was frazzled and the many small wires of which the same was composed had become loose, unraveled and unwoven and this defendant and its said foreman, officers, agents and employees knew or should have known, and the said defendant and its officers, agents and employees had caused and permitted the said wire rope or cable to be dragged in the mud and water until the same and the many small wires composing it had

become rusty, rotten and brittle, and when plaintiff began to cut the said wire cable at the knot the small pieces of wire of which it was composed, because of the rusty, rotten and brittle condition as aforesaid, flew with great force and violence in all directions, one of them striking the plaintiff in the left eye, causing the said left eye to entirely perish away and to be put out and lost to the plaintiff, and another one of the small pieces of wire striking the plaintiff on the left side of the upper lip, passing through the same and into the plaintiff's mouth and gums.

Plaintiff states that the said wire rope in its said rotten and brittle condition was not a reasonably safe appliance for the work and purpose for which plaintiff as aforesaid used and worked with the same for the defendant, for the reason that its said rotten and brittle condition, in case it became necessary to cut the said wire rope as aforesaid, was liable to cause the said small wires composing the said wire rope to break into small pieces during such cutting and cause injury to the person cutting the same, and its said rotten and brittle condition and the danger arising therefrom were at the time known to the defendant and its said foreman and agent and servants, or should have been known to them by the exercise of ordinary care upon their part, and the said wire rope was furnished by the defendant for the said use as aforesaid, and the said defendant was in duty bound to furnish the plaintiff with reasonably safe tools and appliances and this said duty towards the plaintiff said defendant neglected and, on the contrary, did furnish for use in the said work in which the plaintiff was engaged the said wire rope in its said rotten and brittle condition, and plaintiff alleges that it was negligence upon the part of defendant toward the plaintiff to furnish the said wire rope in its said rotten, brittle, unsafe and dangerous condition for use in the said work of the plaintiff for the defendant, and that as a direct result of the said negligence and carelessness of the defendant in furnishing as aforesaid the said defective wire, the plaintiff was injured.''

The answer is a general denial, contributory negligence, and a plea that plaintiff's injury arose out of the ordinary risks incident to the work in which plaintiff was engaged, and that the thing or incident which caused plaintiff's injury was something that defendant could not, by ordinary care, have anticipated.

Defendant predicates error upon the court's action in (1) overruling an *ore tenus* objection to the petition; (2) overruling its demurrer at the close of the case; (3) giving instructions; (4) failing to grant a new trial on the ground of alleged unfair tactics or conduct on the part of plaintiff in concealing the fact that he had in his possession the section of the wire cable where the knot was cut, and notwithstanding this possession plaintiff made much ado about defendant's failure to produce the said section of cable.

We do not think that plaintiff can recover, and it is not necessary to consider any assignment except the refusal of the peremptory request. This record to our mind shows conclusively that plaintiff was injured in such manner as to render defendant not liable. Plaintiff was either injured because of his own carelessness in cutting the cable, or from a condition of the cable which defendant could not in the exercise of ordinary care know or anticipate, or that plaintiff's injury was due to a pure accident without fault on the part of any one. The burden of plaintiff's petition is that defendant was negligent in furnishing him an old rotten and brittle cable, and that when he went to cut it the strands broke because of this old, rotten and brittle condition and a piece struck plaintiff in eye. The evidence fails utterly to show that the cable was old, rotten and brittle or defective in any way. The cable was shown to be somewhat rusty on the outside, and the end near the knot *flared*; but this falls far short of tending to establish that the cable was old, rotten and brittle, and that by reason thereof the slivers or sections were easily dislodged or broken off. Plaintiff testified that the cable was old, and that some of the inside strands were rusty and that it

was frazzled about four feet back from the end. In the statement learned counsel have set out the material part of plaintiff's evidence as follows: "The end of it (the wire cable) was flared and blared up and some of the boys, I don't know who, tied the end of that in the ring on the tongs that we had been moving the logs with. We wanted to unload the car of coal and load logs into the car, and after we got this done, the day before we was supposed to get the car unloaded, why I says to Mr. Snider, that's a nice job, and he says, yes, that's a dandy job for you when you get through with the other. He was referring to getting the tongs loose off of the cable. So I went out there to cut that cable. I laid it down on the ball of the rail and I hit, I don't know, four or five licks, and I stopped and was sitting there looking at it and I placed my chisel and hit it again, and went to raise the cable, and as I raised the cable something hit me in the eye. I mean as I raised the hammer. I asked them to get down and get the rust or whatever it was out of my eye. I went back and finished the job and put the tongs where they belonged right in under where I had this business it was all covered with rust and whole lot of small pieces that had come off on the tie below. It was an old rope. There was maybe three or four inches sticking through or beyond the knot after the strains was put against it. I did not tie the knot in the cable, and don't know who did. I examined the condition of the wire rope and at the place where I cut this knot, there were little pieces scattered around on the tie and the cable was all blared up. Some of the strands of the cable were sound and some were rusty. The inside strands were rusty. The cable was frazzled about four feet up beyond the place where the knot was made in it. Mr. Snider told the men what to do and how to do it. He (Mr. Snider) said to cut that off of there. Q. Did he tell you what kind of tools to get? A. No, because we only had one kind. I had cut cables with a chisel before, but they were sound cables. I never did see particles fly in cutting cables like they did this time.

The only way of fastening the cable was to tie it. This cable had no eye in it. Mr. Snider had said on several occasions that some time we would have to put an eye in it to keep from tying knots in it. Mr. Snider had seen this cable ever since he had been on the job. He had seen it the day before the injury. They (after the injury) cut off a piece about four feet long off of the end of the rope and made an eye in the end of it. They They asked me about the condition of the cable and I told them it was blared and unraveled."

It was shown that this cable was in good condition; that it was used continuously after plaintiff's injury, and was in use at the time of the trial a year after plaintiff was injured. It was shown that eight empty cars had been pulled with this same cable just a week before the trial. It was further shown that the cable was the best that could be bought for the purpose for which it was used. The evidence further shows that the piece which struck plaintiff in the eye was *cut* at both ends, thus showing that plaintiff did not hold the chisel in the same place while attempting to cut the cable. If this was the cause of plaintiff's injury then he cannot complain, since his misfortune is due to his own act and not defendant's. It was further shown that it could not be determined from a reasonable inspection whether pieces would fly when a cable was cut in the manner plaintiff was employing when he was injured; also it was shown that pieces would be as likely to fly from a new cable as an old one when being cut in such manner. Plaintiff testified that where he cut the cable it was covered with rust, and that a number of severed pieces similar to the one that struck him in the eye were on the railroad tie immediately beneath where he was cutting. Plaintiff also said, as will be noticed from his evidence, that he had cut cables before but had never seen particles fly as was the case when he was injured. This only shows, allowing the utmost inference, that particles or pieces were separated from the cable, and were thrown off, but it does not show that defendant by the exercise

of ordinary care could have anticipated that such would be the case if the cable were cut with hammer and chisel. Also it is not shown whether these pieces on the tie were cut at both ends, or were broken off. The mere fact that plaintiff was injured raises no presumption of negligence, and there is nothing in this record which raises an issue tending to show negligence as charged or otherwise.

Measured by the demurrer plaintiff's evidence is accepted as true as well as every reasonable inference deducible therefrom. [Maginnis v. Railroad, 268 Mo. 667, 187 S. W. 1065; Link v. Hamlin, 270 Mo. 319, 193 S. W. 587; Bingaman v. Hannah, 270 Mo. 611, 194 S. W. 276; Holweg v. Bell Telephone Co., 195 Mo. 149, 93 S. W. 262; Link v. Railroad, 233 S. W. (Mo. App.) 834.] But when we consider plaintiff's case in the light of the demurrer we find nothing that tends to show that defendant was negligent in any manner. It is true that negligence is not susceptible of direct proof, but is an inference from facts in evidence. [Hoel v. Land Co., 173 Mo. App. 557, 158 S. W. 694; Callahan v. Warne et al., 40 Mo. 131.] In the last cited case negligence is defined thus: "Negligence is a thing which by its very nature pertains to human conduct, and the action of the mind and will. It is something invisible, intanglible, and for the most part incapable of direct proof, like sensible facts, or physical events. It is, in general, a matter of inference from other facts and circumstances which admit of direct proof, and which may raise a presumption of the truth of the main fact to be proved. These facts and circumstances must be such as would warrant a jury in inferring from them the fact of negligence, by reasoning in the ordinary way, according to the natural and proper relations of things, and consistently with the common sense and experience of mankind."

If the minds of reasonable men may differ as to whether or not negligence may be inferred from the facts in evidence then the question is for the jury. [Hegberg v. Railroad, 164 Mo. App. 514, 147 S. W. 192; Power v.

Railroad, 244 Mo. 1, 148 S. W. 611; Pontius v. Railroad, 174 Mo. App. 576, 161 S. W. 292; Hawkins v. Railroad, 182 Mo. App. 323, 170 S. W. 459; Johnson & Co. v. Springfield Ice Co., 143 Mo. App. 441, 127 S. W. 692.] It was the duty of defendant to use ordinary care to furnish plaintiff with reasonably safe appliances with which to work. Can it be said within the realm of reason and justice that defendant did anything it should not have done or failed to do something which should have been done? Would reasonable and just men differ as to whether defendant was negligent under the facts here? We do not see room for such difference. Waiving the questions of contributory negligence and assumption of risk, we hold that as a matter of law there is no evidence tending to establish negligence on the part of defendant. A case was not made out against defendant by showing the condition of the wire cable plaintiff was attempting to cut and the resultant injury. He must go further and show that an ordinarily prudent man occupying the position of his employer would or should have anticipated that injury would be the probable result if plaintiff undertook to cut the cable in the manner he attempted. [Lowe v. Railroad, 265 Mo. 587, 178 S. W. 442.] Authorities are many to the same effect, and no one disputes this rule of law.

The judgment should be reversed and it is so ordered.

*Cox, P. J.,* concurs. *Farrington, J.,* concurs because he is of the opinion that the injury was the result of one of the ordinary risks incurred when one undertakes to cut a wire rope with a cold chisel.